## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| ROSENFELD FAMILY FOUNDATION, | : |
| Plaintiff, | : : Civil Action No._____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS** |
| HD SUPPLY HOLDINGS, INC., KATHLEEN J. AFFELDT, JOSEPH J. DEANGELO, PETER A. DORSMAN, STEPHEN J. KONENKAMP, PATRICK R. MCNAMEE, SCOTT D. OSTFELD, CHARLES W. PEFFER, JAMES A. RUBRIGHT, MILFORD W. MCGUIRT, and LAUREN TAYLOR WOLFE, | : **OF THE FEDERAL SECURITIES** : **LAWS** : : **JURY TRIAL DEMANDED** : : : : : : : : |
| Defendants. | : : |

Plaintiff Rosenfeld Family Foundation ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against HD Supply Holdings, Inc. ("HD Supply" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which HD Supply will be acquired by The Home Depot, Inc. ("Home Depot") through Home Depot's subsidiary Coronado Acquisition Sub Inc. ("Purchaser") (the "Proposed Transaction").

2.     On November 16, 2020, HD Supply issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated November 15, 2020 to sell HD Supply to Home Depot.  Under the terms of the Merger Agreement, Home Depot will acquire all outstanding shares of HD Supply for $56.00 in cash per share of HD Supply common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on November 24, 2020.  The Tender Offer is scheduled to expire at midnight (i.e., one minute after 11:59 p.m.), New York City time, on December 23, 2020.  The Proposed Transaction is valued at approximately $8 billion.

3.     On November 24, 2020, HD Supply filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that HD Supply stockholders tender their shares in favor of the Tender Offer, omits

or misrepresents material information concerning, among other things: (i) the background of the process leading to the sale of the Company; (ii) HD Supply management's financial projections; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"). Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4.      In short, the Proposed Transaction will unlawfully divest HD Supply's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this

District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  HD Supply is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of HD Supply.

9.     Defendant HD Supply is a Delaware corporation with its principal executive offices located at 3400 Cumberland Boulevard SE, Atlanta, Georgia 30339.  HD Supply is one of the largest wholesale distributors in North America. The Company provides a broad range of products and value-add services to approximately 300,000 customers with leadership positions in the living space maintenance, repair and operations sector.  HD Supply's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "HDS."

10.     Defendant Kathleen J. Affeldt ("Affeldt") has been a director of the Company since 2014.

11.     Defendant Joseph J. DeAngelo ("DeAngelo") has been President and Chief Executive Officer ("CEO") of the Company since January 2005, Chairman of the Board since March 2015, and a director of the Company since August 2007.

12.     Defendant Peter A. Dorsman ("Dorsman") is Lead Independent Director and has been a director of the Company since 2017.

13.     Defendant Stephen J. Konenkamp ("Konenkamp") has been a director of the Company since 2019.

14.     Defendant Patrick R. McNamee ("McNamee") has been a director of the Company since 2013.

15.     Defendant Scott D. Ostfeld ("Ostfeld") has been a director of the Company since 2017.

16.     Defendant Charles W. Peffer ("Peffer") has been a director of the Company since 2013.

17.     Defendant James A. Rubright ("Rubright") has been a director of the Company since 2014.

18.     Defendant Milford W. McGuirt ("McGuirt") has been a director of the Company since June 2020.

19.     Defendant Lauren Taylor Wolfe ("Wolfe") has been a director of the Company since 2017.

20.    Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.    Home Depot is a Delaware corporation with its principal executive offices located at 2455 Paces Ferry Road, Atlanta, Georgia 30339.  Home Depot is the world's largest home improvement specialty retailer, with 2,295 retail stores in all 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, 10 Canadian provinces and Mexico.  Home Depot's common stock is traded on the New York Stock Exchange under the ticker symbol "HD."

22.    Purchaser is a Delaware corporation and a wholly owned subsidiary of Home Depot.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23.    HD Supply is one of the largest industrial distributors in North America, with leadership positions in its two distinct market sectors: Maintenance, Repair & Operations ("MRO") and Specialty Construction.  Through approximately 270 branches and 44 distribution centers in the U.S. and Canada, HD Supply serves its markets with an integrated go-to-market strategy.  The Company has approximately 11,500 associates delivering localized, customer-tailored products, services and expertise, serving approximately 500,000 customers, which include

contractors, maintenance professionals, home builders, industrial businesses, and government entities. HD Supply's broad range of end-to-end product lines and services include approximately 600,000 stock-keeping units of name-brand and proprietary-brand products as well as value-add services supporting the entire life-cycle of a project from construction to maintenance, repair and operations.

24. HD Supply is managed primarily on a product-line basis and reports results of operations in two reportable segments: Facilities Maintenance and Construction & Industrial. Facilities Maintenance distributes MRO products, provides value-add services and fabricates custom products. The Facilities Maintenance business unit serves the owners of multifamily, hospitality, healthcare and institutional facilities. Products include electrical and lighting items, plumbing supplies, HVAC products, appliances, janitorial supplies, hardware, kitchen and bath cabinets, window coverings, textiles and guest amenities, healthcare maintenance and water and wastewater treatment products. Facilities Maintenance operates a distribution center-based model that sells its products primarily through a professional sales force, e-commerce and print catalogs.

25. Construction & Industrial distributes specialized hardware, tools, engineered materials and safety products to non-residential and residential contractors. Service offerings range from pre-bid assistance and product submittals to engineering and tool repair. Construction & Industrial reaches customers through

7

a nationwide network of regionally organized branches as well as print catalogs and e-commerce.  Products include tilt-up brace systems, forming and shoring systems, concrete chemicals, hand and power tools, cutting tools, rebar, ladders, safety and fall arrest equipment, specialty screws and fasteners, sealants and adhesives, drainage pipe, geo-synthetics, erosion and sediment control equipment and other engineered materials used broadly across all types of non-residential and residential construction.   Construction & Industrial also includes Home Improvement Solutions, which offers light remodeling and construction supplies, kitchen and bath cabinets, windows, plumbing materials, electrical equipment and other products, primarily to small remodeling contractors and trade professionals through local retail outlets.

26.    For fiscal 2019, the Company generated: (i) $6 billion in net sales, representing 1.6% growth over fiscal 2018; (ii) net income of $452 million, as compared to net income of $394 million in fiscal 2018; and (iii) $873 million of Adjusted EBITDA, representing 0.2% growth over fiscal 2018.

27.    On September 9, 2020, HD Supply announced its fiscal 2020 second quarter financial results including increased net income per diluted share by $0.02, or 2.5%, to $0.81 for the second quarter of fiscal 2020, as compared to $0.79 for the second quarter of fiscal 2019.  Defendant DeAngelo commented on the Company's second quarter results, stating, "Our financial strength and steadily improving results

reflect the strength of our team and their dedication to safely delivering best-in-class service."

**The Proposed Transaction**

28.    On November 16, 2020, HD Supply issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> ATLANTA, Nov. 16, 2020 -- HD Supply Holdings, Inc. (NASDAQ: HDS), one of the largest wholesale distributors in North America, today announced that The Home Depot, Inc., the world's largest home improvement retailer, has entered into a definitive agreement to acquire HD Supply.  Under the terms of the agreement, The Home Depot, Inc. has agreed to commence a tender offer, through a wholly-owned subsidiary, to acquire all of the outstanding shares of HD Supply common stock for $56 per share in cash.  The Boards of Directors of both The Home Depot, Inc. and HD Supply have unanimously approved the terms of the agreement, and the Board of Directors of HD Supply has resolved to recommend that shareholders accept the offer, once it is commenced.  The acquisition is structured as an all-cash tender offer for all outstanding issued common stock of HD Supply followed by a merger in which remaining shares of HD Supply would be converted into the same U.S. dollar per share consideration as in the tender offer.  The acquisition is expected to be completed during The Home Depot, Inc.'s fiscal fourth quarter, which ends on January 31, 2021 and is subject to applicable regulatory approval and customary closing conditions.
>
> "The Board and I believe the strategic acquisition by The Home Depot, Inc. will create significant benefits for our customers, associates, and shareholders," stated Joe DeAngelo, Chairman and CEO of HD Supply. "We look forward to working together to deliver the safest, most dependable and innovative customer experience to the living space maintenance professional."

## Insiders' Interests in the Proposed Transaction

29.     HD Supply insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of HD Supply.

30.     Specifically, Company insiders stand to reap substantial financial benefits for securing the deal with Home Depot.  The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares | Cash Consideration for Shares ($) |
|---|---|---|
| *Directors* | | |
| Kathleen J. Affeldt | — | — |
| Peter A. Dorsman | — | — |
| Stephen J. Konenkamp | 1,000 | $ 56,000 |
| Milford W. McGuirt | — | — |
| Patrick R. McNamee(1) | 31,220 | $ 1,748,320 |
| Scott D. Ostfeld(2) | 843,295 | $ 47,224,520 |
| Charles W. Peffer | 27,183 | $ 1,522,248 |
| James A. Rubright | 21,608 | $ 1,210,048 |
| Lauren Taylor Wolfe(3) | 1,181,702 | $ 66,175,312 |
| | | |
| *Executive Officers* | | |
| Joseph J. DeAngelo(1) | 487,692 | $ 27,310,752 |
| Evan J. Levitt | 42,790 | $ 2,396,240 |
| Dan S. McDevitt | 14,411 | $ 807,016 |
| Bradley W. Paulsen | 12,790 | $ 716,240 |
| Anna Stevens | 7,804 | $ 437,024 |

31.     Further, upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted stock units ("RSUs"), deferred stock units ("DSUs"), restricted shares granted under a company equity incentive plan (each, a

"Restricted Share"), and performance-based restricted stock units ("PSUs") will be converted into the right to receive cash payments. The following table summarizes the cash payments the Company's insiders stand to receive in connection with the vesting of their Company stock options, RSUs, DSUs, Restricted Shares, and PSUs upon consummation of the Proposed Transaction:

| Name of Executive Officer or Director | Cash Consideration for Shares ($) | Cash Consideration for Stock Options ($) | Cash Consideration for Restricted Shares/RSUs ($) | Cash Consideration for DSUs ($) | Cash Consideration for PSUs ($) | Total Cash Consideration with respect to Shares and Share-Based Awards in the Offer and the Merger ($) |
|---|---|---|---|---|---|---|
| *Directors* | | | | | | |
| Kathleen J. Affeldt | $ — | $ — | $ 247,520 | $ 1,237,600 | $ — | $ 1,485,120 |
| Peter A. Dorsman | $ — | $ — | $ 357,000 | $ 1,145,592 | $ — | $ 1,502,592 |
| Stephen J. Konenkamp | $ 56,000 | $ — | $ 247,520 | $ 113,120 | $ — | $ 416,640 |
| Milford W. McGuirt | $ — | $ — | $ 196,560 | — | $ — | $ 196,560 |
| Patrick R. McNamee | $ 1,748,320 | $ — | $ 247,520 | — | $ — | $ 1,995,840 |
| Scott D. Ostfeld | $ 47,224,520 | $ — | $ 247,520 | $ 345,408 | $ — | $ 47,817,448 |
| Charles W. Peffer | $ 1,522,248 | $ — | $ 247,520 | — | $ — | $ 1,769,768 |
| James A. Rubright | $ 1,210,048 | $ — | $ 247,520 | — | $ — | $ 1,457,568 |
| Lauren Taylor Wolfe | $66,175,312 | $ — | $ 247,520 | $ 894,320 | $ — | $ 67,317,152 |
| *Executive Officers* | | | | | | |
| Joseph J. DeAngelo | $ 27,310,752 | $21,835,476 | $ 5,624,584 | — | $ 3,192,056 | $ 57,962,868 |
| Evan J. Levitt | $ 2,396,240 | $ 7,693,683 | $ 4,412,408 | — | $ 1,030,736 | $ 15,533,067 |
| Dan S. McDevitt | $ 807,016 | $ 2,274,689 | $ 2,181,592 | — | $ 453,768 | $ 5,717,065 |
| Bradley W. Paulsen | $ 716,240 | $ 3,145,506 | $ 3,818,808 | — | $ 323,736 | $ 8,004,290 |
| Anna Stevens | $ 437,024 | $ 2,118,780 | $ 2,168,264 | — | $ 201,936 | $ 4,926,004 |

32.     Additionally, if they are terminated in connection with the Proposed Transaction, HD Supply's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Joseph J. DeAngelo | $ 5,000,000 | $ 17,913,841 | $ 100,000 | $ 23,013,841 |
| Evan J. Levitt | $ 1,956,766 | $ 8,904,575 | $ 100,000 | $ 10,961,341 |
| Dan S. McDevitt | $ 1,505,710 | $ 4,207,518 | $ 100,000 | $ 5,813,228 |
| Bradley S. Paulsen | $ 1,932,000 | $ 6,555,803 | $ 100,000 | $ 8,587,083 |

## **The Recommendation Statement Contains Material Misstatements or Omissions**

11

28.    The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to HD Supply's stockholders.   The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29.    Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the process leading to the sale of the Company; (ii) HD Supply management's financial projections; and (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman.

***Material Omissions Concerning the Background of the Proposed Transaction***

30.    The Recommendation Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

31.    For example, the Recommendation Statement fails to disclose the terms of the confidentiality agreements the Company entered into with potential bidders. The Recommendation Statement discloses that in 2018 the Board and HD Supply senior management, with the assistance of Goldman, reviewed the Company's strategic alternatives and engaged in a process involving outreach to industry participants and discussions with respect to potential strategic transactions. *See*

Recommendation Statement at 12.  Additionally, on October 31, 2020, HD Supply executed a confidentiality agreement with an industry participant referred to in the Recommendation Statement as "Party A."   *Id*. at 13.   The Recommendation Statement, however, fails to disclose whether over the course of the strategic alternatives process in 2018 the Company entered into confidentiality agreements with industry participants and further fails to disclose whether these confidentiality agreements and the confidentiality agreement entered into with Party A contained standstill provisions and/or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

32.    The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.   If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement— since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Recommendation Statement.

33.     Any reasonable HD Supply stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

34.     The omission of this information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning HD Supply Management's Financial Projections***

35.     The Recommendation Statement omits material information regarding Company management's financial projections.

36.     For example, the Recommendation Statement sets forth:

On an annual basis, HD Supply's management prepares multi-year prospective financial information for internal management purposes and review with the HD Supply Board. This multi-year prospective financial information was used by the HD Supply Board in its evaluation of the $56 per Share to be received by the holders of Shares in the Offer and the Merger and to enable Goldman Sachs to perform certain financial analyses in connection with its opinion to the HD Supply Board as described above under the heading "—*Opinion of Goldman Sachs & Co. LLC*." Certain non-public projected financial data relating to HD Supply for the fiscal years 2020 through 2024 was prepared by or at the direction of management of HD Supply (the "**Forecasts**"). The Forecasts (other than Unlevered Free Cash Flow) were also provided to Home Depot in connection with its evaluation of a potential transaction in November 2020, under the circumstances described in Item 4 under "*Background and Reasons for the HD Supply Board's Recommendation—Background of the Offer*". As part of its ongoing annual preparation of multi-year prospective financial information, management further updated the Forecasts in November 2020 based on the most recent information available and shared this update with the HD Supply Board. The updated Forecasts were not

14

provided to Home Depot or Goldman Sachs and reflected immaterial changes (a) in revenue in 2023 and 2024, together with the related impact to Adjusted EBITDA, and (b) in free cash flow in each forecasted period.

*Id.* at 18.  The Recommendation Statement, however, fails to identify whether HD Supply's forecasts set forth on page 19 of the Recommendation Statement are the forecasts HD Supply's management prepared for internal management purposes and review with the Board and that were provided to Home Depot in connection with its evaluation of a potential transaction in November 2020 or the updated forecasts that were not provided to Home Depot or Goldman.  The Recommendation Statement must disclose whichever set of forecasts was omitted.

37.    Additionally, the Recommendation Statement must disclose the reason that HD Supply management's updated forecast was not provided to Goldman.

38.    Moreover, with respect to the set of the Company's financial projections disclosed in the Recommendation Statement, the Recommendation Statement fails to disclose: (i) cash flow from operating activities; and (ii) all line items underlying unlevered free cash flow.

39.    The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Financial Analyses***

40.     The Recommendation Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, HD Supply's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

41.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Recommendation Statement fails to disclose: (i) the Company's projected fully diluted shares outstanding for each of the years ending January 31, 2022, January 31, 2023, and January 31, 2024; and (ii) quantification of the inputs and assumptions underlying the discount rate of 7.50%.

42.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 6.0% to 7.0%; (ii) quantification of the terminal values of the Company; (iii) the basis for using a range of enterprise value multiples of 11.5x to 13.5x; and (iv) the fully diluted shares outstanding of HD Supply.

43.    With respect to Goldman's *Premia Analysis*, the Recommendation Statement fails to disclose: (i) the specific transactions analyzed; and (ii) the individual premiums paid for each of the transactions analyzed.

44.    The omission of this information renders the statements in the "Opinion of Goldman Sachs & Co. LLC" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

45.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.   Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other HD Supply stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

33.    Plaintiff repeats all previous allegations as if set forth in full.

34.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting HD Supply stockholders to tender their shares in the Tender Offer.

35.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

36.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

37.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

38.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of HD Supply, who will be deprived of their right to make an informed decision whether to tender their

shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

39.    Plaintiff repeats all previous allegations as if set forth in full.

40.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

41.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender its shares pursuant to the Tender Offer or seek appraisal.

42.    As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury

by being denied the opportunity to make an informed decision in deciding whether or not to tender its shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     The Individual Defendants acted as controlling persons of HD Supply within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of HD Supply and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and

supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

47.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

48.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

49.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of HD Supply, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 1, 2020                  **WEISSLAW LLP**

*/s/ Michael A. Rogovin*
Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com